IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BETH RICHMOND,

        Plaintiff,

                                     3:16-CV-1936-PK

v.

                                     FINDINGS AND
                                     RECOMMENDATION

CHRYSLER GROUP LLC and JAKE
SWEENEY CHRYSLER JEEP DODGE,
INC.,

        Defendants.

PAPAK, Magistrate Judge:

        Plaintiff Beth Richmond, acting in her capacity as the personal representative of the estate

of decedent Jason Richmond ("Jason"), filed this action against an entity identified as Chrysler

Group LLC ("Chrysler")[1] and Jake Sweeney Chrysler Jeep Dodge, Inc. ("Sweeney"), in the

Multnomah County Circuit Court on August 31, 2016. By and through her complaint, Richmond

alleges that Jason purchased a motor vehicle manufactured by Chrysler (a limited liability

corporation organized under the laws of the State of Delaware) from Sweeney (a corporation

---

        [1] It appears that the entity identified by Richmond as "Chrysler Group LLC" is properly
denominated as "FCA US LLC."

organized under the laws of the State of Ohio) in September 2012, that the vehicle stalled while Jason was driving it in August 2013, and that Jason was struck and killed by another vehicle while he was standing near his stalled vehicle after having moved it to the side of the road. Arising out of the foregoing, Richmond alleges both defendants' liability for negligence. Richmond seeks award of damages for pain and suffering in the amount of $1,000,000, economic damages in the amount of $5,000,000, and damages for loss of consortium in the amount of $5,000,000. Chrysler removed Richmond's action to this court effective October 4, 2016, based on the complete diversity of the parties (Chrysler asserts that it is headquartered in Michigan and that its sole member is a Delaware limited liability corporation the sole member of which is a Netherlands corporation while Sweeney is headquartered in Ohio) and the amount in controversy. This court may properly exercise diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

Now before the court are defendant Sweeney's motion (#3) to dismiss for lack of personal jurisdiction and Chrysler's motion (#5) to dismiss or transfer for improper venue. I have considered the motions and all of the pleadings and papers on file. Richmond, a party represented by counsel, has not filed any opposition to either of the two motions now before the court. For the reasons set forth below, Sweeney's motion (#3) to dismiss for lack of personal jurisdiction should be granted, Chrysler's motion (#5) to dismiss or transfer for improper venue should be denied, and Richmond's negligence claim should be dismissed without prejudice to the extent alleged against Sweeney.

Page 2 - FINDINGS AND RECOMMENDATION

## LEGAL STANDARDS

### I.    Motion to Dismiss for Lack of Personal Jurisdiction

A motion to dismiss for lack of personal jurisdiction is governed by Federal Civil

Procedure Rule 12(b)(2).  *See* Fed. R. Civ. P. 12(b)(2).  "In opposition to a defendant's motion to

dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that

jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008), *citing Sher v.

Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).  In evaluating the defendant's motion, "[t]he court

may consider evidence presented in affidavits to assist it in its determination and may order

discovery on the jurisdictional issues." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001),

*citing Data Disc, Inc. v. Systems Technology Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).

If the court decides the motion based on the pleadings and affidavits submitted by the parties

without conducting an evidentiary hearing, "the plaintiff need make only a *prima facie* showing

of jurisdictional facts to withstand the motion to dismiss." *Id.*, *quoting Ballard v. Savage*, 65

F.3d 1495, 1498 (9th Cir. 1995).  In the absence of such an evidentiary hearing, the court accepts

uncontroverted allegations contained within the plaintiff's complaint as true, and resolves

conflicts between statements contained within the parties' affidavits in the plaintiff's favor.  *See

id.*

In the event that plaintiffs avoid a motion to dismiss for lack of personal jurisdiction by

making only a *prima facie* showing of jurisdictional facts, personal jurisdiction over each

defendant necessarily remains to be established by a preponderance of the evidence at a

subsequent, plenary evidentiary hearing.  *See Data Disc, Inc. v. Systems Technology Associates,

Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977); *see also id.* at n. 2.  Such plenary evidentiary hearing

may be conducted as a pretrial proceeding, in which case the judge sits as the finder of fact and is empowered to weigh the evidence and to make determinations of credibility. *See, e.g., Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004); *see also Data Disc*, 557 F.2d at 1285. In the absence of such a pretrial proceeding, plaintiffs are required to establish personal jurisdiction over each defendant by a preponderance of the evidence at trial. *See, e.g., Data Disc*, 557 F.2d at 1285 n. 2.

## II.    Motion to Dismiss for Improper Venue or to Transfer Venue

A motion to dismiss for improper venue is governed by Federal Civil Procedure Rule 12(b)(3). If the propriety of venue is challenged by a motion brought under Rule 12(b)(3), the plaintiff bears the burden of proving that venue is proper. *See Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). When considering a motion to dismiss for improper venue, a court need not accept the plaintiff's allegations as true and may consider facts outside of the pleadings. *See Doe 1 v. AOL, LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009). Whether to dismiss an action for improper venue, or alternatively to transfer venue to a proper court, is entirely within the discretion of the district court. *See King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992).

## FACTUAL BACKGROUND

## I.    The Parties

Plaintiff Richmond is the personal representative of Jason's estate. Chrysler asserts that Richmond is now, and has been since the date the complaint was first filed in this action, a citizen and resident of the State of Oregon. There is no allegation or evidence to suggest that Jason was at any time a resident or citizen of Oregon.

Defendant Chrysler is engaged in the business of manufacturing and selling automotive vehicles. As noted above, Chrysler is organized under Delaware law and is headquartered in Michigan. Chrysler's sole member is FCA North America Holdings, LLC, a Delaware limited liability corporation, the sole member of which is Fiat Chrysler Automobiles, N.V., a Netherlands corporation. This court may properly take judicial notice that FCA North America Holdings, LLC, is headquartered in Michigan, *see* http://www.bloomberg.com/research/stocks/private/snapshot.asp?privcapId=138396659, and that Fiat Chrysler Automobiles, N.V., is headquartered in England, *see* https://www.fcagroup.com/it-IT/Pages/home.aspx. *See* Fed. R. Evid. 201.

Defendant Sweeney is engaged in the business of selling automotive vehicles. As noted above, Sweeney is an Ohio corporation headquartered in Ohio. Sweeney has no physical presence in Oregon, does not do business in Oregon, holds no property in Oregon, has no employees in Oregon, and has never had a registered agent for service of process in Oregon. *See* Declaration of Joshua J. Sweeney ("Sweeney Decl."), ¶¶ 3-6.

## II.    The Parties' Dispute[2]

Jason purchased a 2000 Jeep Patriot SUV manufactured by Chrysler from Sweeney on September 6, 2012. *See* Complaint, ¶¶ 4-6. The purchase occurred in Ohio, where Sweeney is located. *See* Sweeney Decl., ¶ 7.

On August 31, 2013, Jason was operating the vehicle he purchased from Sweeney when it

---

[2] Except as otherwise indicated, the following recital of facts reflects my presumption that all of the facts alleged in Richmond's complaint are true and accurate, and additionally construes the parties' evidentiary submissions in light of the legal standard governing motions to dismiss for lack of personal jurisdiction.

stalled. *See* Complaint, ¶ 7.  Jason moved the vehicle to the side of the road, and then while

"attending to" the vehicle, Jason was struck and killed by another vehicle traveling along the

road. *See id.*.  The driver of the other vehicle reported to law enforcement personnel that Jason

had been standing "partially in the lane of travel" at the time he was struck.  Idaho State Police

Incident Report B13002703 dated August 31, 2013 ("Incident Report," attached as Exh. 1 to

Sweeney's motion and as Exh. 1 to Chrysler's motion) at 6.  The incident took place in Idaho.

*See id., passim.*  Jason's vehicle was at that time registered in Utah.  *See id.* at 3.

Richmond alleges that at the time Chrysler manufactured the vehicle and delivered it to

Sweeney for sale to members of the public it was in a dangerously defective condition, *see*

Complaint, ¶ 8, that Sweeney sold it to Jason without substantial modification of its condition,

*see id.*, ¶ 9, and that the defendants were negligent in failing to correct the vehicle's defects

before selling it to Jason, *see id.*, ¶ 10.

### III.    Material Procedural History

Richmond filed this action by and through her counsel of record on August 31, 2016.

Chrysler removed her action to this court effective October 4, 2016.

The defendants filed their dispositive motions now before the court on October 13, 2016.

Accordingly, Richmond's response to the two motions was due on or before October 31, 2016.

*See* Fed. R. Civ. P. 6(c).  Richmond did not file any response to either of the two motions.  On

November 9, 2016, each defendant filed an advice to the court that Richmond had failed to

oppose the two motions, serving such advice on Richmond's counsel of record through the

CM/ECF system.  To date, Richmond has neither filed any response to either of the two

dispositive motions now before the court nor made any other appearance in this court.

# ANALYSIS

## I.    Sweeney's Motion (#3) to Dismiss for Lack of Personal Jurisdiction

Sweeney challenges this court's personal jurisdiction over it. "When [as here] no federal statute governs personal jurisdiction, the district court applies the law of the forum state." *Boschetto*, 539 F.3d at 1015, *citing Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Oregon's long-arm statute creates a standard co-extensive with federal jurisdictional standards, *see* Or. R. Civ. P. 4L, so a federal court sitting in the District of Oregon may exercise personal jurisdiction wherever it is possible to do so within the limits of federal constitutional due process, *see, e.g., Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990).

Federal due process jurisprudence requires that, to be subject to the personal jurisdiction of a federal court, a nonresident defendant must have at least "'minimum contacts'" with the court's forum state such that "the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004), *quoting International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Two forms of personal jurisdiction are available for application to a nonresident defendant:  general personal jurisdiction and specific personal jurisdiction.

It is clear that this court lacks general personal jurisdiction over defendant Sweeney. "For general jurisdiction to exist over a nonresident defendant . . . , the defendant must engage in continuous and systematic general business contacts . . . that approximate physical presence in the forum state." *Schwarzenegger*, 374 F.3d at 801, *quoting Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984) and *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000). "This is an exacting standard, as it should be, because

a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Id.*, *citing Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986).

Where a corporate defendant is neither headquartered nor incorporated in the forum state, for a district court's exercise of general personal jurisdiction over it to be proper, its general business contacts with that state must be so continuous and systematic "as to render it essentially at home" there. *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014), *quoting Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011), *citing International Shoe*, 326 U.S. at 317; *see also id.* at 760-762. The United States Supreme Court has emphasized that general personal jurisdiction under such circumstances would be "an exceptional case," *id.* at 761 n. 19, and should be based not "solely on the magnitude of the defendant's in-state contacts" but rather on "an appraisal of a corporation's activities in their entirety, nationwide and worldwide," *id.* at 762 n. 20; *see also id.* ("[a] corporation that operates in many places can scarcely be deemed at home in all of them"). Here, the evidence of record establishes that Sweeney is neither organized under Oregon law nor headquartered in Oregon, and that Sweeney lacks the kind of continuous and systematic contacts with Oregon that would make it "at home" here. Richmond offers no allegation to the contrary.

It is likewise clear that this court may not properly exercise specific personal jurisdiction over Sweeney in connection with Richmond's claim against it. The courts of the Ninth Circuit apply a three-pronged test for determining whether, in connection with a given claim, the exercise of specific personal jurisdiction over a nonresident defendant is appropriate:

(1)    The non-resident defendant must purposefully direct his activities or

consummate some transaction with the forum . . . ; or perform some act by
which he purposefully avails himself of the privilege of conducting
activities in the forum, thereby invoking the benefits and protections of its
laws;

(2)     the claim must be one which arises out of or relates to the defendant's
forum-related activities; and

(3)     the exercise of jurisdiction must comport with fair play and substantial
justice, *i.e.* it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802, *quoting Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987).

The plaintiff bears the burden of satisfying the first two prongs of the test, whereupon the burden

shifts to the defendant to "'present a compelling case' that the exercise of jurisdiction would not

be reasonable." *Id.*, *quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985).

In the context of cases that sound primarily in contract, the Ninth Circuit applies a

"purposeful availment" analysis to determine whether a defendant has "purposefully avail[ed]

itself of the privilege of conducting activities within the forum State, thus invoking the benefits

and protections of its laws" and thereby satisfying the first prong of the three-pronged test.

*Schwarzenegger*, 374 F.3d at 802, *quoting Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  In the

context of cases that sound primarily in tort, to determine whether the first prong of the three-

pronged minimum-contacts test is satisfied the courts of the Ninth Circuit employ a three-part

"effects" test derived from *Calder v. Jones*, 465 U.S. 783, 789 (1984), which requires that the

defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state,

(3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food

Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).  "The requirement is but a test for determining

the more fundamental issue of whether a 'defendant's conduct and connection with the forum

Page 9 - FINDINGS AND RECOMMENDATION

state are such that he should reasonably anticipate being haled into court there.'" *Id.*, *quoting World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

In applying the *Calder* effects test, the courts are required to "look[] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014). That is, the out-of-state defendant's relationship with the forum state "must arise out of contacts that the 'defendant *himself*' creates with the forum State," *id.* (emphasis original), *quoting Burger King*, 471 U.S. at 475, and the defendant's link with the forum state cannot be based solely on the defendant's conduct directed toward the plaintiff, notwithstanding that the plaintiff is a forum-state resident, or otherwise solely on the plaintiff's own contacts with the forum state, *see id.* at 1122-1123. "Thus, a 'mere injury to a forum resident is not a sufficient connection to the forum.' . . . Rather, 'an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State.'" *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015), *quoting Walden*, 134 S. Ct. at 1125.

The second prong of the three-pronged minimum-contacts test for specific personal jurisdiction requires that the plaintiff's claim arise out of the nonresident defendant's forum-related activities. *See Boschetto*, 539 F.3d at 1016. Moreover, it has long been settled law in the Ninth Circuit that "[w]here. . . a plaintiff raises two [or more] separate causes of action, the court must have in personam jurisdiction over the defendant with respect to each claim." *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1289, n. 8 (9th Cir. 1977), *citing* 6 C. Wright & A. Miller, Federal Practice and Procedure § 1588, at p. 816 (1971).

At the third prong of the specific personal jurisdiction test, the burden shifts to the

defendant to present a "compelling case" to rebut the presumption that the exercise of specific personal jurisdiction would be reasonable. *See id.*

> In determining reasonableness, th[e] [courts of the Ninth] [C]ircuit examine[] seven factors: the extent of purposeful interjection; the burden on the defendant to defend the suit in the chosen forum; the extent of conflict with the sovereignty of the defendant's state; the forum state's interest in the dispute; the most efficient forum for judicial resolution of the dispute; the importance of the chosen forum to the plaintiff's interest in convenient and effective relief; and the existence of an alternative forum.

*Shute v. Carnival Cruise Lines*, 897 F.2d 377, 386 (9th Cir. 1990) (modifications supplied), *citing Federal Deposit Ins. Corp. v. British-American Ins. Co., Ltd.*, 828 F.2d 1439, 1442 (9th Cir. 1987). "The court[s] must balance the seven factors to determine whether the exercise of jurisdiction would be reasonable." *Id.*, *citing British-American*, 828 F.2d at 1442.

Here, Richmond has made no allegation that Sweeney in any way purposefully directed conduct into Oregon, and she has offered no evidence or argument in opposition to Sweeney's evidence that Sweeney had no connection to any of the events described in Richmond's complaint other than to have sold the vehicle to Jason in Ohio. Because Richmond has not met her burden to establish at the first prong of the three-pronged minimum-contacts test for specific personal jurisdiction that Sweeney purposefully directed conduct into Oregon, and moreover because it does not appear possible that she could have satisfied that burden had she attempted to do so, this court may not properly exercise specific personal jurisdiction over Sweeney for purposes of this action. In consequence, Sweeney's motion should be granted, and Richmond's claims should be dismissed without prejudice to the extent alleged against Sweeney.

## II.    Chrysler's Motion (#5) to Dismiss or Transfer for Improper Venue

Chrysler challenges the propriety of venue in Oregon for deciding Richmond's claims

against it, on the ground that this action has no connection to Oregon other than Richmond's residence here.[3] Specifically, Chrysler moves to dismiss for improper venue and in the alternative for transfer of this action to the United States District Court for the District of Idaho.

Venue in federal court is generally governed by 28 U.S.C. § 1391. *See* 28 U.S.C. § 1391(a). However, in cases removed to federal court from state court, venue is no longer governed by Section 1391, but rather by 28 U.S.C. § 1441(a). *See Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665-666 (1953); *see also* 28 U.S.C. § 1441(a). "This is because removal, if proper, automatically satisfies federal venue requirements. Under the removal statute, venue is proper if removal is to the district in which the state action was pending and the federal court has jurisdiction." *Skillnet Solutions, Inc. v. Entm't Publs, LLC*, Case No. C 11-4865 PSG, 2012 U.S. Dist. LEXIS 28087, *12 (N.D. Cal. Mar. 2, 2012) (footnotes, citations omitted). Moreover, "[t]his is true regardless of whether venue was proper in the state court to begin with." *Id.* (footnotes, citations omitted). "A defendant who properly removes to federal court therefore meets the venue requirements of § 1441, in effect canceling any improper venue objection under Fed. R. Civ. P. 12(b)(3)." *Id.* (footnotes, citations omitted).

Here, it is undisputed that this court may properly exercise diversity jurisdiction over Richmond's claim. It is additionally undisputed that Chrysler elected to remove Richmond's action to this court. It follows that Chrysler has waived any objection to improper venue here, and that its motion is accordingly without merit to the extent it seeks dismissal. *See Skillnet*

---

[3] The court need not make any determination as to whether it may properly exercise personal jurisdiction over Chrysler, because by and through filing its challenge to venue without expressly reserving the right to dispute personal jurisdiction, Chrysler waived any defect in this court's personal jurisdiction over it for purposes of this action. *See Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986).

*Solutions*, 2012 U.S. Dist. LEXIS 28087 at *12.

By contrast, "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The fact that Chrysler has waived defects in venue in this District does not preclude transfer to another proper venue if to do so would promote the convenience of the parties or witnesses or the interests of justice.

> A motion to transfer venue under § 1404(a) requires the court to weigh multiple factors in its determination whether transfer is appropriate in a particular case. For example, the court may consider: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. Additionally, the presence of a forum selection clause is a "significant factor" in the court's § 1404(a) analysis.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000) (footnotes omitted). The defendant bears the burden of establishing the greater appropriateness of the transferee forum. *See id.* Courts afford a degree of deference to a plaintiff's choice of her home forum. *See, e.g.*, *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981).

As to the first of the eight factors – the location where the underlying transactions took place – I note that the vehicle was manufactured in Michigan and purchased in Ohio, which facts militate in favor of venue in neither Oregon nor Idaho, and that the incident of August 31, 2013, took place in Idaho, which weighs in favor of venue in Idaho. Richmond's claim for negligence is brought under the Oregon common law, such that the second factor – the state with the greatest familiarity with the governing law – necessarily weighs mildly in favor of venue in Oregon.

Page 13 - FINDINGS AND RECOMMENDATION

Richmond filed her action in this District, and she appears to be an Oregon resident, such that the third factor – the plaintiff's choice of forum – weighs heavily in favor of venue in Oregon. *See Piper Aircraft*, 454 U.S. at 255. Relatedly, the fourth factor – the parties' contacts with the two candidate fora – necessarily militates in favor of venue in Oregon, because plaintiff resides here, Chrysler has offered no evidence or argument to suggest that plaintiff has any significant contacts with Idaho, and Chrysler has offered no evidence or argument to suggest that it has any greater or lesser contacts with Idaho than it has with Oregon.

As to the fifth factor – the contacts relating to the cause of action – I note (again) that the vehicle was manufactured in Michigan and sold to Jason in Ohio, which militate in favor of neither of the two candidate fora, and that the incident of August 31, 2013, took place in Idaho, which weighs mildly in favor of transfer to Idaho. Chrysler has offered no evidence or argument bearing directly on the sixth factor – the relative expensiveness of litigation in the two candidate fora – but it appears clear that Richmond would incur travel costs if required to litigate in Idaho that would not arise if permitted to litigate in her home state of Oregon, there is nothing in the record to suggest that Chrysler's travel-related litigation costs would be any greater or lesser in Idaho than in Oregon, and it appears likely that at least some witness testimony would require smaller costs to obtain, for both parties, if litigation took place in Idaho rather than Oregon. I therefore conclude that the sixth factor is effectively neutral, or very nearly so.

As to the seventh factor – the availability of compulsory process – it appears likely that any witnesses with knowledge of facts relating to Chrysler's alleged negligence in manufacturing Jason's vehicle will be located in Michigan, and that there may be witnesses located in Ohio with knowledge bearing on possible contributory or comparative negligence defenses or on possible

causation defenses; process to compel the attendance of such witnesses would be equally unavailable in both Idaho and Oregon. It further appears likely that at least one non-party witness with material knowledge will be subject to compulsory process in Oregon but not in Idaho, in that the driver of the vehicle that struck Jason on August 31, 2013, holds an Oregon drivers license. *See* Incident Report at 3. It is also likely that there will be witnesses located in Idaho with knowledge bearing on possible defenses, including Idaho law enforcement personnel called to the scene of the incident, a witness who observed the incident take place, and the operator of the tow truck called to the scene to move Jason's vehicle. *See id.* at 4-5. These latter witnesses are likely to be subject to compulsory process in Idaho but not in Oregon. The seventh factor therefore weighs mildly in favor of transfer to Idaho.

Finally, as to the eighth factor – ease of access to non-testimonial sources of proof – I note first that documentary evidence and other non-testimonial proof bearing on Richmond's claim and Chrysler's potential defenses thereto located in Michigan and Ohio is immaterial to the relative appropriateness of the candidate fora of Oregon and Idaho. Some documentary evidence is likely to be located in Idaho – including in particular the Incident Report, which is already in the evidentiary record – but the most important piece of physical evidence bearing on Richmond's claim is Jason's vehicle itself, which appears likely to be in Oregon, where the personal representative of Jason's estate resides. The eighth factor therefore weighs mildly in favor of retaining venue in Oregon.

In light of the deference owed to the plaintiff in connection with her selection of her own home state as the forum for this litigation and the fact that second, third, fourth, and eighth factors all weigh in favor of retaining venue in this District (the second and fourth only mildly)

while only the first, fifth, and seventh factors weigh in favor of transfer to Idaho (the fifth and seventh only mildly), I find that Chrysler has not met its burden to establish that it would promote the convenience of the parties or witnesses or the interests of justice to require Richmond to litigate her claim in Idaho rather than in this District. This court should therefore deny Chrysler's motion to the extent it seeks transfer of venue to the District of Idaho.

## CONCLUSION

For the reasons set forth above, Sweeney's motion (#3) to dismiss for lack of personal jurisdiction should be granted, Chrysler's motion (#5) to dismiss or transfer for improper venue should be denied, and Richmond's negligence claim should be dismissed without prejudice to the extent alleged against Sweeney.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 2nd day of December, 2016.

Honorable Paul Papak
United States Magistrate Judge